| | |
|---|---|
| IMPOSTER PASTOR MOVIE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID OLIVER,<br><br>    Defendant. | ORDER |

This matter comes before the court on Plaintiff's motion for default judgment [DE 14]. For the reasons that follow, Plaintiff's motion is GRANTED IN PART.

### I. Plaintiff's Allegations of Fact[1]

Plaintiff is a film production company based out of Wake Forest, North Carolina. DE 1 at 2. In 2020, Plaintiff[2] developed the screenplay for a new film. *Id.* at 3. Plaintiff registered a copy of the screenplay with the Writers Guild of America in March 2021, and production of the film was completed later that year. *Id.* In early 2022, the film premiered at a local theater in Wake Forest. *Id.* at 4. The following year, Plaintiff entered into a distribution agreement with another company (the "Distributor") to market the film on various platforms. *Id.* at 4-5. Beginning in the summer of 2023, the film was made available for rent or purchase on several online streaming services, including YouTube. *Id.* at 5.

---

[1] "In considering a motion for default judgment, the court 'accepts as true the well-pleaded factual allegations in the complaint as to liability.'" *Joe Hand Promotions, Inc. v. GFL United LLC*, 645 F. Supp. 3d 530, 533 (M.D.N.C. 2022) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)).

[2] In this order, the term "Plaintiff" will also refer to Plaintiff's employees and agents.

Around that same time, an individual who claimed an association with Defendant contacted Plaintiff and indicated that Defendant had written a stage play and accompanying screenplay that bore some similarities to Plaintiff's film. *Id.* at 6-7. According to this individual, the stage play was performed in a theater in Longview, Texas in 2019, and the screenplay was developed around then as well. *See id.* at 5. Defendant adapted his screenplay into a short film in 2023. *Id.* at 6. Defendant's play has never been performed outside of Longview Texas, and neither the screenplay nor the short film have been published or otherwise made publicly available. *Id.* At the time, no one affiliated with Plaintiff had ever seen or heard of Defendant's stage play, screenplay, or short film (collectively, Defendant's "works"). *Id.* at 10.

Shortly after this contact from Defendant's associate, legal counsel for Defendant sent Plaintiff a cease-and-desist letter, which asserted that Plaintiff's film "is essentially a very similar copy" of Defendant's works. DE 1-2 at 1. The letter listed a series of ostensible similarities between Defendant's works and Plaintiff's film, and threatened legal action unless Plaintiff pulled its film out of the market. *See id.* at 3.

Plaintiff's film and Defendant's works "both depict generally the same story" with some "superficial similarities," but the similarities included in Defendant's letter are based on "false or inaccurate portrayals of the works themselves," misrepresentations, unprotectable tropes, and otherwise unprotectable general themes. DE 1 at 8, 11-12. Undeterred, Defendant registered his screenplay with the United States Copyright Office in August 2023 and applied to register his short film with the Copyright Office in early 2024. *Id.* at 10. Defendant also sent a cease-and-desist letter to Plaintiff's parent company in August 2023, sent another cease-and-desist letter to the Distributor in October 2023, and filed a Digital Millennium Copyright Act ("DMCA") takedown request with YouTube in November 2023. *Id.* at 14-15; *see also* DE 1-4. In the cease-and-desist

letters to Plaintiff's parent company and the Distributor, as well as the DMCA takedown request, Defendant repeated the false accusation that Plaintiff's film infringes Defendant's works. *See id.*

As a result of Defendant's efforts, YouTube removed Plaintiff's film from its platform, and Plaintiff pulled its film from all other platforms and the Distributor ceased marketing and distributing the film. *Id.* at 14-15. Plaintiff then sent a response letter to Defendant, which included "a detailed, line-by-line explanation of how" Plaintiff's film does not infringe any protectable material in Defendant's works. *Id.* at 15; *see also* DE 1-5 at 1-3. Plaintiff attempted to resolve this dispute with Defendant out of court, but Defendant continues to threaten litigation. *Id.* at 16.

Those continued threats prompted this action, through which Plaintiff brings four claims: (1) declaratory judgment of non-infringement of copyright, (2) unlawful misrepresentation in a DMCA takedown request, (3) tortious interference with contract, and (4) interference with prospective economic advantage. *Id.* at 17-22. Plaintiff seeks declaratory and injunctive relief, damages, attorney's fees, and costs. *Id.* at 22-23.

## II. Procedural History

Plaintiff instituted this action on February 23, 2024. *See* DE 1 at 23. On April 29, 2024, counsel for Defendant, Jason S. Nardiello, sent Plaintiff's counsel a signed waiver of service of the summons. DE 9 at 1. Defendant's signed waiver indicated that he "received . . . a copy of the complaint," would "save the expense of serving a summons and complaint," and understood that he "must file and serve an answer or a motion under Rule 12 within 60 days from [March 27, 2024]." *Id.* Defendant's signed waiver expressly stated his awareness that if he "fail[ed] to do so, a default judgment will be entered against [him]." *Id.*

3

On June 3, 2024, after the deadline for Defendant to file an answer or motion under Rule 12 had passed, Plaintiff moved for entry of default. DE 11. Plaintiff also certified that service of the motion for entry of default was served on Defendant and his counsel. DE 12 at 1. Accordingly, the Clerk of Court entered default against Defendant. DE 13. Plaintiff now moves for default judgment, DE 14, has served the default judgment motion on Defendant and his counsel, DE 19 at 1-2, and the time for Defendant to respond has expired.

### III. Legal Standards

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, a party "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment." *Educational Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Rather, entry of default judgment is "a matter resting in the sound discretion of the District Judge." *Papagianakis v. The Samos*, 186 F.2d 257, 263 (4th Cir. 1950).

In deciding whether to exercise that sound discretion, "[t]he court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (holding that relief in default judgment must only be afforded "according to what is proper to be decreed upon the statements of the bill assumed to be true" and not "as of course according to the prayer of the bill"). In addition, the court should balance the Fourth Circuit's "strong preference" that matters "be disposed of on their merits," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010), with

4

consideration of whether "the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005), rendering satisfaction of that preference sufficiently improbable. Lastly, the court must be satisfied that it has subject-matter jurisdiction over the causes of action and personal jurisdiction over the defendant; absent personal jurisdiction, "the default judgment [is] void." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *see also Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 221 (4th Cir. 2019) (explaining that, "if the court lacks jurisdiction over the subject matter of the dispute, [the defendant] need not appear").

The foregoing principles weigh in favor of the court exercising its discretion and entering default judgment (in part) against Defendant.

## IV. Analysis

### a. Subject Matter Jurisdiction

The court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because Plaintiff's request for declaratory relief under the copyright laws and claim for DMCA misrepresentation arise under "laws . . . of the United States." 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1338. The court exercises supplemental subject-matter jurisdiction over Plaintiff's North Carolina common law tort claims because they are "derive[d] from [the same] common nucleus of operative fact" as Plaintiff's federal claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a).

### b. Personal Jurisdiction

The court may maintain specific personal jurisdiction over Defendant because Plaintiff's claims arise out of or relate to Defendant's contacts with this forum, including (1) the telephone calls from Defendant's associate to Plaintiff in North Carolina informing Plaintiff "that there was

a dispute of some nature relative to" Plaintiff's film, (2) the emailing of two cease-and-desist letters to Plaintiff and its parent company in North Carolina, (3) the sending of materials related to Defendant's works to Plaintiff in North Carolina (which informed Plaintiff's non-infringement analysis), (4) the emailing of a third cease-and-desist letter to the Distributor which targeted Plaintiff (a North Carolina company) and its assets by alleging copyright infringement of Defendant's works, (5) the DMCA takedown notice which likewise targeted Plaintiff and its assets, and (6) continued threats of litigation directed at Plaintiff in North Carolina (which prompted Plaintiff's declaratory judgment request). DE 1 at 7-16; *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 398 n.7 (4th Cir. 2003); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

c. Liability

Before addressing each claim individually, the court notes that it has considered the Fourth Circuit's strong interest in merits-based adjudications. *Colleton Prep*, 616 F.3d at 417. But that strong interest has been undermined by Defendant's conduct in this lawsuit. As recounted previously, Defendant waived service of process but thereafter failed to file an answer or Rule 12 motion, with the knowledge that such failure could subject him to a default judgment. *See* DE 9 at 1. "[T]he adversary process has been halted because of an essentially unresponsive party" – Defendant. *Lawbaugh*, 359 F. Supp. 2d at 421. Because Defendant's conduct has extinguished the prospect of a merits-based adjudication, entry of default judgment is warranted.

i. *Declaratory Judgment of Non-Infringement of Copyright*

"In a case of actual controversy within its jurisdiction," this court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

6

The Declaratory Judgment Act "does not impose a mandatory obligation upon the federal courts," but a court "should" entertain a request for declaratory relief when that relief "will serve a useful purpose in clarifying and settling the legal relations in issue, and [] will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks omitted). In that regard, "[t]hree elements must be met to state a claim for declaratory judgment: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *In re Abell*, 549 B.R. 631, 649 (Bankr. D. Md. 2016) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004)).

The court finds that those elements are met in this action. First, there is an actual controversy of sufficient immediacy between the parties; Defendant has repeatedly asserted that Plaintiff's film infringes his works, has filed a DMCA takedown request on that basis, and continues to threaten affirmative litigation against Plaintiff. DE 1 at 7-16; *see also* DE 1-2; DE 1-4; *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 n.5 (Fed. Cir. 2013). Second, the court possesses an independent basis for subject-matter jurisdiction because the dispute involves alleged infringement under the copyright laws of the United States. *Young-Wolff v. McGraw-Hill Companies*, No. 13-CV-4372, 2014 WL 349711, at *6 n.2 (S.D.N.Y. Jan. 31, 2014) (explaining that, because a federal court "has original jurisdiction over claims relating to the Copyright Act," it likewise "has an independent basis for jurisdiction over [a] declaratory judgment claim under the Copyright Act"); *Lee v. Makhnevich*, No. 11-CV-8665, 2013 WL 1234829, at *3 (S.D.N.Y.

7

Mar. 27, 2013) (holding that court has independent basis for subject-matter jurisdiction to issue "declaration of copyright non-infringement under the Copyright Act"); *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964). And third, the court would not abuse its discretion in entertaining Plaintiff's claim for declaratory relief because adjudicating that claim will "allow[ an] uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

On the merits, the court finds that Plaintiff has plausibly alleged that its film does not infringe Defendant's works. Given the procedural posture, Defendant admits those allegations and the court accepts them as true. *Ryan*, 253 F.3d at 780; *Joe Hand Promotions*, 645 F. Supp. 3d at 533. "The Copyright Act affords protection to 'original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated.'" *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (quoting 17 U.S.C. § 102(a)). Plaintiff's film would not infringe Defendant's works unless Defendant could demonstrate (1) "ownership of the copyright" and (2) "copying" by Plaintiff. *Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988).

Plaintiff has plausibly alleged the absence of copying. Specifically, Plaintiff alleges that Defendant's asserted similarities between Plaintiff's film and Defendant's works are based on "false or inaccurate portrayals of the works themselves," misrepresentations, unprotectable tropes, and otherwise unprotectable general themes. *Id.* at 8, 11-12; *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985) (explaining that "copyright is limited to those aspects of the work . . . that display the stamp of the author's originality"); *Towler v. Sayles*, 76 F.3d 579, 584 (4th Cir. 1996) (holding that "a list comparing random similarities scattered

8

throughout the works is inherently subjective and unreliable") (internal quotation marks omitted). Further, the Complaint incorporated by reference "a detailed, line-by-line explanation of how" Plaintiff's film does not infringe any protectable material in Defendant's works. *Id.* at 15; *see also* DE 1-5 at 1-3; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (emphasizing that "party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements") (internal italics and quotation marks omitted). The Complaint's allegations therefore demonstrate that Plaintiff's film and Defendant's works are not substantially similar. *See* DE 15 at 14-16 (collecting cases). Lastly, Plaintiff alleges that none of its employees or agents had ever seen or heard of Defendant's works when the film was developed and produced. DE 1 at 10; *see also Rucker v. Harlequin Enterprises, LTD.*, No. 12-CV-1135, 2013 WL 707922, at *4 (S.D. Tex. Feb. 26, 2013) (concluding that, without "direct evidence of copying," party claiming infringement would have to show that alleged infringer "had access to the [] copyrighted work"). Taken together, the court finds that Plaintiff has plausibly alleged that its film does not infringe Defendant's works, entitling Plaintiff to a declaration of non-infringement.

## ii. *Unlawful Misrepresentation in DMCA Takedown Request*

"Any person who knowingly materially misrepresents . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the [party] who is injured by such misrepresentation, as the result of [a] service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. § 512(f). A decade ago, one federal court observed that "[t]here [wa]s not a great deal of case law interpreting this provision of DMCA," *Ground Zero Museum Workshop*

9

*v. Wilson*, 813 F. Supp. 2d 678, 704 (D. Md. 2011), and that observation remains true.[3] But the requirement of a "knowing" misrepresentation has some teeth; "[w]hen copyright holders request that an allegedly infringing video be removed, they are not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimately mistaken." *National Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) (internal quotation mark omitted); *see also Sunny Factory, LLC v. Chen*, No. 21-CV- 3648, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) ("This provision imposes a high standard for finding a violation of the DMCA by a copyright owner in infringement notifications."). Ultimately, "there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004).

The court finds that the Complaint contains sufficient factual matter to permit the inference that Defendant subjectively knew that his allegation of infringement in the DMCA takedown request was false at the time he made it. Courts have routinely held that, when a plaintiff plausibly alleges that no reasonable copyright holder could have believed that material infringed a copyright, it is permissible to infer that the copyright holder did not subjectively believe the allegation of infringement in a DMCA takedown request. *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015); *Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014); *Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). Given the Complaint's detailed information regarding the myriad differences between Plaintiff's film and Defendant's works, the court can conclude the same here. *See* DE 1 at 7-16; DE 1-5 at 1-3.

---

[3] The Fourth Circuit has never interpreted this provision of the DMCA, other than to note once in passing that it provides a remedy "for any injury [an entity] suffers as a result of removing or disabling noninfringing material." *ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619, 625 (4th Cir. 2001).

10

Defendant's misrepresentation was also material. After he submitted it, YouTube removed Plaintiff's film from its platform. DE 1 at 14-15; *cf. Ground Zero*, 813 F. Supp. 2d at 704–05. That removal caused Plaintiff to suffer damages. *E.g.*, DE 17. The court therefore finds that Plaintiff has stated a DMCA claim and is entitled to default judgment on that claim.

### iii. *Tortious Interference with Contract*

"The elements of a claim for tortious interference with contract are: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016). "In determining whether an actor's conduct is justified, consideration is given to the following: the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor and the contractual interests of the other party." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220–21, 367 S.E.2d 647, 650 (1988).

The Complaint satisfies those elements, by alleging (1) the existence of a contact between Plaintiff and the Distributor, (2) that Defendant knew of that contract, (3) that Defendant induced the Distributor to pull the film from the market by threatening litigation in the cease-and-desist letter, (4) that Defendant acted without justification because he knew his assertion of infringement was false, and (5) that Plaintiff suffered damages as a result. DE 1 at 7-16. Plaintiff has therefore stated a tortious interference claim, and the court will enter default judgment on that claim.

11

### iv. Interference with Prospective Economic Advantage

On the other hand, the court finds that Plaintiff is not entitled to default judgment on its final claim, that Defendant's cease-and-desist letter and DMCA takedown request constitutes wrongful interference with a prospective economic advantage. "[T]o state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (internal quotation mark omitted). Here, the Complaint does not plausibly allege that Defendant's conduct interfered with prospective contracts between Plaintiff and third parties. *See* DE 1 at 21 (referencing other streaming services that would "distribute and stream the [] Film," as well as "consumers" who would purchase the film from streaming services). The Distributor, not Plaintiff, was responsible for selecting the streaming services through which it would market Plaintiff's film. *See* DE 17 at 1, 5 (explaining that Distributor had "exclusive and worldwide rights to market and distribute" the film, and that, "[a]s a matter of course, [the Distributor] staggers the media through which it distributes films"). And consumers would contract with various streaming services, not Plaintiff, to purchase the film. *See* DE 17-2; DE 17-3; DE 17-4; DE 17-5 (reflecting revenue from streaming services). Accordingly, to the extent Defendant's conduct interfered with a prospective economic advantage of Plaintiff, that advantage was only to be derived from its *existing* contract with the Distributor.

The Complaint is additionally deficient because its reference to potential business with "numerous distributors" and "many customers" is too vague to support a claim for wrongful interference with prospective economic advantage. *See Beverage Systems*, 368 N.C. at 701, 784 S.E.2d at 463 (holding that plaintiff must "identif[y] a particular business with which it lost an

12

economic advantage" and that a generalized expectation that "customers would continue to do business with plaintiff" is "insufficient to support a claim for . . . tortious interference with prospective economic advantage"); *Truist Fin. Corp. v. Rocco*, No. 23-CVS-005395-590, 2024 WL 1804720, at *20 (N.C. Super. Apr. 25, 2024) (allegation of plaintiff's expectation of contracts with "prospective customers" was "fatally deficient"); *Security Camera Warehouse, Inc. v. Bowman*, No. 16-CVS-5385, 2017 WL 1718806, at *8 (N.C. Super. May 1, 2017) (holding that "[t]he mere expectation of future contracts with potential customers is insufficient to state a claim") (internal quotation marks omitted); *The Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, No. 16 CVS 4186, 2016 WL 6142993, at *8 (N.C. Super. Oct. 21, 2016) (dismissing claim where plaintiff failed to identify "the specific customers with whom [the d]efendants allegedly have interfered").

The court thus finds that Plaintiff has failed to state a claim for wrongful interference with prospective economic advantage upon which relief may be granted, and the court will not enter judgment for Plaintiff on that claim.

d. Damages

Because the court has found "that liability is established, it must [now] determine damages." *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012). "The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages." *E.E.O.C. v. Carter Behav. Health Servs., Inc.*, No. 4:09-CV-122-F, 2011 WL 5325485, at *4 (E.D.N.C. Oct. 7, 2011), *recommendation adopted*, No. 4:09-CV-122-F, 2011 WL 5325473 (E.D.N.C. Nov. 3, 2011). To make this independent determination, the court "may rely [] on affidavits or documentary evidence in the record to determine the appropriate sum." *J & J Sports*, 845 F. Supp. 2d at 706.

13

Plaintiff has provided competent evidence, in the form of an affidavit from the Chief Executive Office of the Distributor, that it has suffered at least $24.66 in damages per day after the Distributor pulled the film from the market. DE 17 at 2-9; DE 17-2; DE 17-3; DE 17-4; DE 17-5. The Distributor pulled the film on November 3, 2023; 498 days have since passed. *See* Days Calculator, https://www.timeanddate.com/date/duration.html (last accessed March 14, 2025). Accordingly, Plaintiff is entitled to $12,280.68 in damages.

e. Mandatory Injunction

Plaintiff seeks a mandatory injunction requiring Defendant to "retract" his cease-and-desist letter to the Distributor and DMCA takedown request. DE 1 at 22; DE 15 at 21. A permanent injunction is "a drastic and extraordinary remedy," and the court must endeavor to avoid the "risk[ of] awarding more relief than is merited." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017). To obtain a permanent injunction, a party must demonstrate (among other factors) "that it has suffered an irreparable injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). According to Plaintiff, it has suffered and will continue to suffer an irreparable injury in the absence of an injunction because the Distributor has ceased marketing the film, and the Distributor has declared under penalty of perjury that it "will not again distribute" the film "until and unless it receives clear and final assurances that" the film "does not infringe any copyrights held by" Defendant. DE 17 at 9; *see also* DE 15 at 21-22 (arguing that cessation of distribution of film "in it of itself, is irreparable harm").

A judicial declaration of non-infringement is a clear assurance that Plaintiff's film does not infringe Defendant's works; issuing a permanent injunction in addition to that declaration would constitute "more relief than is merited." *SAS Institute*, 874 F.3d at 385. The declaratory relief Plaintiff is receiving through this order will operate as res judicata going forward. *Morris v. Jones*,

14

329 U.S. 545, 550–51 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default."). And, armed with a court order finding that Plaintiff's film does not infringe Defendant's works, Plaintiff is well-positioned to submit a counter-notice to YouTube. *See* 17 U.S.C. § 512(g). In sum, the court finds that the declaratory relief provided herein will prevent legal injury to Plaintiff in the future. Plaintiff therefore has not demonstrated a continuing risk of irreparable injury. *eBay*, 547 U.S. at 391. As a result, the court denies Plaintiff's request for a permanent injunction.

   f.  Attorneys' Fees

Plaintiff seeks recovery of its attorneys' fees. DE 1 at 22; DE 15 at 18-19. In briefing its motion for default judgment, Plaintiff requests attorneys' fees under 17 U.S.C. § 512(f). DE 15 at 18-19. Plaintiff is entitled to recover a reasonable attorneys' fee under that statute. *See* 17 U.S.C. § 512(f).

In addition to Section 512(f), the court has discretion to award attorneys' fees under an adjacent statute in the copyright laws. Pursuant to 17 U.S.C. § 505, "[i]n *any* civil action under [Title 17], the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505 (emphasis added). Federal courts routinely award attorneys' fees under Section 505 to a prevailing party in a federal declaratory judgment action that requires construction of copyright law. *E.g.*, *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 263 (2d Cir. 2015); *Klinger v. Conan Doyle Est., Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014); *Seventh Chakra Films, LLC v. Alesse*, No. 21-CV-21286, 2023 WL 7216079, at *1 (S.D. Fla. Nov. 2, 2023); *Zamoyski v. Fifty-Six Hope Rd. Music Ltd., Inc.*, 767 F. Supp. 2d 218, 221–22 (D. Mass. 2011); *cf. Rosciszewski v. Arete Assocs., Inc.*, 1

15

F.3d 225, 233 (4th Cir. 1993) (upholding fee award under Section 505 where copyright law only became relevant by way of preemption defense to state law claim). Accordingly, the court finds that an award of attorneys' fees in this action is both authorized and warranted.

Having determined as much, the court must next assess whether the fees sought by Plaintiff are "reasonable." 17 U.S.C. § 505; *see also Automattic*, 82 F. Supp. 3d at 1032; *Alper Auto., Inc. v. Day to Day Imports, Inc.*, No. 18-CV-81753, 2022 WL 3904327, at *1 (S.D. Fla. July 26, 2022). In this context, the Supreme Court has instructed district courts to "consider[]" the factors "identified" in *Hensley v. Eckerhart*. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The *Hensley* Court observed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" because that measure "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Automattic*, 82 F. Supp. 3d at 1032 ("To determine a reasonable award of attorneys' fees [under Section 512(f)], courts employ the lodestar figure.") (internal quotation marks omitted); *Alper Auto*, 2022 WL 3904327, at *1 ("In calculating attorney fee awards, courts use the lodestar method," which "may then be adjusted for the results obtained"). The Supreme Court also described "the extent of a plaintiff's success" as "a crucial factor." *Hensley*, 461 U.S. at 440.

Plaintiff seeks $34,346.95 in fees, representing approximately 66 hours of work from two partner-level attorneys (at respective rates of $485-510 and $450) and a midlevel associate (at a rate of $350). DE 16 at 3; DE 16-1 at 1-4; DE 18 at 3; DE 18-1 at 1-30. At the outset, the court finds that these hourly rates are reasonable for the prevailing market. *See Edwards v. Hooks*, No. 5:21-CT-3270, 2023 WL 8449250, at *3 (E.D.N.C. Dec. 6, 2023) (concluding that "hourly rates

16

of $500 for partners" and "$300 for associates" represent "reasonable rates" for this market). The court further finds that 66 hours (less than two weeks of full-time work) is a reasonable amount to have expended in this action, and that a significant portion of those hours were driven by Defendant's pre-litigation and litigation conduct. Specifically, Plaintiff's counsel spent approximately 20 hours preparing responses to Defendant's multiple pre-litigation assertions of copyright infringement. *See* DE 16-1 at 1, 3; DE 18-1 at 2, 6, 11. And Plaintiff's counsel expended around 15 additional hours drafting the motion for default judgment and accompanying memorandum after Defendant failed to appear and defend this action. DE 18-1 at 27-28. Thus, over half of the hours for which Plaintiff seeks recovery are directly attributable to Defendant's litigation conduct. Responding to that conduct was unavoidable, and therefore reasonable.

As a result, the court finds that $34,346.95 is a reasonable attorneys' fee in this matter.[4] The court did consider whether that fee should be reduced because the court is not granting Plaintiff relief on all of its claims. *See Hensley*, 461 U.S. at 440. But Plaintiff's primary claim was for a declaration of non-infringement. *See* DE 1 at 17. Plaintiff prevailed on that claim (and others), and *Hensley* instructs that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. That principle militates against reducing Plaintiff's fee award. Plaintiff here received substantial relief.

---

[4] The court has also considered the *Johnson/Barber* factors and finds that many of those factors are subsumed in the lodestar calculation, and that the other factors (to the extent they are relevant in this case) support the fee award that Plaintiff requests. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *but see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (emphasizing that lodestar approach is "the guiding light of [] fee-shifting jurisprudence"); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("unlike the *Johnson* approach, the lodestar calculation is objective") (internal quotation mark omitted); *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010) ("*Perdue* . . . appears to significantly marginalize the twelve-factor *Johnson* analysis"); *see also Fogerty*, 510 U.S. at 534 (advising district courts to consider *Hensley* when determining fee award under Section 505); *Hensley*, 461 U.S. at 434 n.9 (emphasizing that "many of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate").

17

## V. Conclusion

Plaintiff's motion for default judgment is GRANTED IN PART, in that Plaintiff is entitled to default judgment on its declaratory, DMCA misrepresentation, and tortious interference claims. Further:

1. The court DECLARES that neither Plaintiff's Screenplay nor its Film (entitled "Impostor Pastor") infringes any of Defendant's intellectual property rights related to a stage play, stage 2 script, screenplay, and/or short film (associated with the title "I Can Do All Things"); and

2. Plaintiff is AWARDED $12,280.68 in damages and $34,346.95 in attorneys' fees. Interest shall accrue from the date this order is entered, calculated in the manner set forth in 21 U.S.C. § 1961.

The Clerk of Court is directed to enter judgment against Defendant consistent with this order.

SO ORDERED this 14th day of March, 2025.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE